IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| IN RE: VERSO CORPORATION, *et al.*, | : | Chapter 11 |
| | : | Bankr. No. 16-10163 (KG) |
| Debtors. | : | (Jointly Administered) |
| | : | |
| UPPER PENINSULA POWER COMPANY, | : | |
| | : | |
| Appellant, | : | |
| v. | : | |
| | : | C.A. No. 17-577-MN |
| VERSO CORPORATION, *et al.,* | : | |
| | : | |
| Appellees. | : | |

**<u>MEMORANDUM OPINION</u>**

July 29, 2019
Wilmington, Delaware


**NOREIKA, U.S. DISTRICT JUDGE**

This dispute arose in the Chapter 11 cases of debtor Verso Corporation ("Verso") and certain affiliates (together, "Debtors"). Before the Court is an appeal by Upper Peninsula Power Company ("UPPCO") from the Bankruptcy Court's May 3, 2017 order (B.D.I. 1690)[1] ("Order") denying UPPCO's motion for allowance and payment of an administrative expense claim (B.D.I. 1660) ("Motion"). For the reasons set forth herein, the Order is affirmed.

## I. BACKGROUND

### A. UPPCO Agreements and SSR Claims

UPPCO is a Michigan corporation that operates as an electric utility provider in upper Michigan. (APP19).[2] On February 28, 2013, prior to the bankruptcy proceedings, UPPCO entered into a Power Purchase Agreement with debtor Escanaba, an indirect subsidiary of Verso, whereby UPPCO agreed to supply Escanaba with electric power generated from a hydroelectric generation project on the Escanaba River in exchange for an annual fixed price per MWh, subject to a true up. (APP48). Midcontinent Independent System Operator ("MISO") runs a large wholesale electric market and requires certain generating facilities (including UPPCO) that have been designated as system support resources ("SSR") to continue operations to maintain the reliability of the electric grid. (APP21). The cost of the continued operation of the SSR facilities is shared among the other electric generating facilities on the grid, including UPPCO, according to an allocation formula set by MISO and approved by the Federal Energy Regulatory Commission

---

[1] The docket of the Chapter 11 cases, captioned *In re Verso Corporation, et al.,* Case No. 16-10163-KG (Bankr. D. Del.) is cited herein as "B.D.I. __."

[2] The Appendix filed in support of UPPCO's opening brief (D.I. 14) is cited herein as "APP[xx]," and the Supplemental Appendix filed in support of Debtors' Answering Brief (D.I. 17) is cited herein as "SA[xx]."

1

("FERC"). (*Id.*). UPPCO passes those charges through to its customers, including the Debtors, as transmission charges as part of UPPCO's overall charges ("tariffs"). (APP130-131).

On February 19, 2015, FERC issued an order that required MISO to submit a revised SSR allocation method. (APP67-74). On May 20, 2015, MISO proposed an allocation method that reallocated and imposed higher charges for SSR on certain electric companies, including UPPCO, for their share of the 2014 and 2015 SSR charges ("SSR Cost Reallocation"). (APP75-84). On September 17, 2015, FERC entered an order approving the basic elements of the SSR Cost Reallocation ("September 2015 Order"), and directed MISO to make an additional compliance filing, which was accepted by FERC on May 3, 2016. (APP111-122, 152 FERC ¶ 61, 216 at 33-41; APP123-129, 155 FERC ¶ 61, 134 at 6-10). As a result of the September 2015 Order, MISO allocated to UPPCO a greater share of the SSR charges.

This appeal concerns UPPCO's Motion seeking payment of the reallocated SSR charges for 2014 and 2015 that arose out of the SSR Cost Reallocation that UPPCO would have passed through to the Debtors as part of UPPCO's tariffs ("SSR Claims").

B.  **Chapter 11 Cases and Stipulation**

On January 26, 2016 (the "Petition Date"), each of the Debtors filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code. In the Chapter 11 cases, UPPCO timely filed proofs of claim asserting claims against Debtors NewPage Wisconsin System Inc. ("NWSI") and Escanaba for the prepetition delivery of energy to the Debtors ("UPPCO Claims"). The UPPCO Claims did not mention, or preserve, UPPCO's rights with respect to any other claims that UPPCO held against the Debtors. (SA259-294). On June 13, 2016, the Debtors filed a *Notice of (A) Cure Amounts, If Any, Related to Executory Contracts and Unexpired Leases to be Assumed by the Debtors Pursuant to the Plan; and (B) Related Procedures in Connection Therewith* (B.D.I.1099) ("Cure Notice"), which, among other things, identified the Debtors' executory contracts with

2

UPPCO ("UPPCO Agreements") to be assumed under the Plan with a cure amount of $486,254.86. (SA75, SA97). On June 22, 2016, UPPCO filed its objection to the Debtors' Cure Notice, alleging that the cure amount in connection with the assumption of the UPPCO Agreements should be $547,279.18. (SA100).

On June 23, 2016, the Bankruptcy Court entered an order (B.D.I. 1223) ("Confirmation Order") confirming the Debtors' plan of reorganization (B.D.I. 1177) ("Plan"). (SA2). The Plan became effective and the Debtors emerged from bankruptcy on July 15, 2016 (the "Effective Date") (B.D.I. 1322). (SA71). Among other things, the Plan established August 15, 2016 as the deadline for claimants to assert an administrative expense claim against the Debtors. (B.D.I. 1322).

On August 2, 2016, the Reorganized Debtors and UPPCO entered into the Stipulation, which (i) provided for the assumption of the UPPCO Agreements subject to payment of the agreed cure amount in satisfaction of any prepetition defaults under the UPPCO Agreement, and (ii) disallowed and expunged all of UPPCO's claims against the Debtors that arose before the Effective Date, whether or not reflected in a proofs of claim. (APP16-17). Specifically, paragraph 4 of the Stipulation provides that:

> Any and all claims held by UPPCO arising on or before the Effective Date, including, without limitation, the UPPCO Claims, whether or not evidenced by one or more filed proofs of claim, against any of the Debtors are hereby disallowed and expunged in their entirety without need for further action by UPPCO or the Reorganized Debtors or further Bankruptcy Court approval.

(APP16). On August 3, 2016, the Bankruptcy Court approved the Stipulation. (APP10-11).

3

## C. UPPCO's Motion and Order

On April 7, 2017, UPPCO filed its Motion seeking allowance and payment of the SSR Claims as an administrative expense[3] in the amount of $629,248. (*See* APP19-33). UPPCO asserted that, due to the SRR Cost Reallocation, UPPCO was unable to calculate the Debtors' share of SSR until it received information from MISO in September 2016. (APP22). UPPCO further asserted that, "because of the uncertainty and actual inability to calculate, the Debtors and UPPCO agreed that the Debtors' payment for the SSR Cost Reallocations would not be due until UPPCO was billed by MISO." (*Id.*). "UPPCO received information from MISO in September 2016" and "calculated the Debtors' share of SSR charges and included such charges in monthly invoices to the Debtors as the Debtors requested. Since September 2016 however, the Debtors have refused to pay their allocated SSR charges to UPPCO, asserting that portion of the obligation was discharged in the bankruptcy." (*Id.*). Although the parties' Stipulation clearly "disallowed and expunged" "any and all claims held by UPPCO arising on or before the Effective Date" of the Plan

---

[3] UPPCO's Motion sought allowance of its asserted administrative expense claims under § 365(g) of the Bankruptcy Code, which governs the assumption and rejection of executory contracts, and § 503(b) of the Bankruptcy Code, which governs the allowance of administrative expenses. (*See* APP22-24 ¶¶ 16, 23). Section 503(b) of the Bankruptcy Code provides that the Bankruptcy Court shall allow as an administrative expense the "actual, necessary expenses" incurred by a creditor "in making a substantial contribution" in a Chapter 11 case. *See* 11 U.S.C. § 503(b)(3)(D). A main purpose for granting administrative priority to certain expenses is to incentivize creditors to continue doing business with a debtor. *In re Merry-Go-Round Ent., Inc.,* 180 F.3d 149, 158 (4th Cir. 1999). Bankruptcy courts have broad discretion to determine whether a claim is a proper administrative expense. *Ford Motor Credit v. Bankr. Estates of Benn,* 362 B.R. 1, 5 (E.D. Mich. 2007). However, administrative claims must be strictly construed based on the presumption that a debtor has limited resources to be distributed equally to creditors. *In re Juvennelliano*, 464 B.R. 651, 655 (Bankr. D. Del. 2011) (citing *In re Michalek,* 393 B.R. 642, 643 (Bankr. E.D. Wis. 2008)). To obtain reimbursement for these expenses, UPPCO bore the burden of showing a substantial contribution to the Debtors' bankruptcy. *See* 11 U.S.C. § 503(b)(3)(D); *Leidos Eng'g, LLC v. KiOR, Inc. (In re KiOR, Inc.)*, 567 B.R. 451, 458-59 (D. Del. 2017) ("[A]s the party seeking reimbursement, [claimant] had the burden to prove that it was entitled to a substantial contribution award by a preponderance of the evidence.")

4

(which occurred on July 15, 2016), UPPCO appeared to argue that the Debtors' obligation to pay the SSR Claims arose post-Effective Date, in September 2016, and only "once MISO provided information to enable calculation of the SSR [C]harges allocated to the Debtors." (APP23). UPPCO argued that the Debtors' failure to pay the SSR charges was a post-assumption breach giving rise to an administrative claim. UPPCO further argued that that the doctrine of laches barred Debtors from asserting that the SSR Claims were discharged because, according to UPPCO, the Debtors failed, for an unreasonably long time, to claim that the SSR Claims were prepetition obligations. (APP24-27). Finally, UPPCO argued that the doctrine of judicial estoppel, which generally bars a party from gaining an advantage by litigation on one theory and then seeking an inconsistent advantage by pursuing an incompatible theory, barred the Debtors from arguing that the SRR Claims were disallowed and expunged pursuant to the Stipulation. (APP27-28).

In response to the Motion, the Debtors filed an opposition and declaration in support, asserting that the SSR Claims clearly arose pre-Effective Date and were therefore disallowed and expunged pursuant to the Stipulation. (*See* APP51). Following briefing on the Motion, the Bankruptcy Court held a hearing on May 3, 2017. (*See* SA238-258). The record reflects that, despite its evidentiary burden, UPPCO did not file a declaration in support of the Motion or call any witness at the hearing, and the Bankruptcy Court therefore proceeded with legal argument. The same day, the Bankruptcy Court issued the Order denying the Motion based on the terms of the Stipulation. (APP143 ("The short answer is that the Stipulation disallows the Motion.")). Based on numerous references to the record, the Bankruptcy Court determined that "it is clear to the Court that the SSR Cost Reallocations obligated UPPCO [to pay SSR charges] by September 2015," and concluded that UPPCO became legally obligated – and the SRR Claim against Debtors arose – "by September 2015." (APP143-44). "Therefore, UPPCO knew when it entered into the Stipulation that it owed money for 2014-2015, a time period which predated the Stipulation in

5

August 2016." (*Id.*). Accordingly, the Stipulation that "expunge[ed] and disallow[ed] 'any and all claims held by UPPCO arising on or before the Effective Date . . .' included the SSR Cost Reallocations." (*Id.*). The Bankruptcy Court rejected UPPCO's laches argument, noting that laches is an affirmative defense to a claim and therefore not available to UPPCO, as the party asserting a claim in this matter. (*Id.*). The Bankruptcy Court further determined that the doctrine of judicial estoppel did not apply, as UPPCO "presented no evidence that Debtors took inconsistent positions or acted dishonestly or in bad faith" or that UPPCO relied on the Debtors' schedules in assuming that the SSR Claims were prepetition claims. (*See id.*).

On January 28, 2016, UPPCO filed a timely notice of appeal with respect to the Order (D.I. 1). The appeals are fully briefed. (D.I. 14, 16, 17, 18). Oral argument was not requested by any party. (*See* D.I. 21).

## II. JURISDICTION AND STANDARDS OF REVIEW

The Court has jurisdiction to hear an appeal from a final judgment of the Bankruptcy Court pursuant to 28 U.S.C. § 158(a)(1). An order that allows or disallows a claim is an appealable, final order. *Orsini Santos v. Mender*, 349 B.R. 762, 768 (1st Cir. 2006). In conducting its review of the issues on appeal, this Court reviews the Bankruptcy Court's findings of fact for clear error and exercises plenary review over questions of law. *See Am. Flint Glass Workers Union v. Anchor Resolution Corp.,* 197 F.3d 76, 80 (3d Cir. 1999). The Court must "break down mixed questions of law and fact, applying the appropriate standard to each component." *Meridian Bank v. Alten*, 958 F.2d 1226, 1229 (3d Cir. 1992). The Bankruptcy Court's finding that judicial estoppel did not apply is reviewed under an abuse of discretion standard. *See McNemar v. Disney Store, Inc.*, 91 F.3d 610, 613 (3d Cir. 1996), *cert. denied*, 519 U.S. 1115 (1997). Review of the Bankruptcy Court's decision not to apply laches has several components. Factual findings, such as length of delay and prejudice, are reviewed under the clearly erroneous standard; balancing of equities are

6

reviewed for abuse of discretion; and the Bankruptcy Court's legal rulings are subject to *de novo* review. *See Churma v. U.S. Steel Corp.*, 514 F.32d 589, 592-93 (3d Cir. 1975).

## III. ANALYSIS

### A. The SSR Claims Arose Pre-Effective Date and Were Disallowed and Expunged by the Stipulation[4]

The Bankruptcy Court correctly determined that UPPCO released the SSR Claims under the Stipulation and that the SSR Claims were therefore disallowed. UPPCO does not dispute that the Stipulation is unambiguous: UPPCO agreed to disallow and expunge "any and all claims [against the Debtors] arising on or before the Effective Date, including, without limitation, the UPPCO Claims." (APP16). By agreeing to have its claims "disallowed," UPPCO agreed it would receive no distribution on account of the SSR Claims under the Debtors' Plan. (SA46 (Plan § 9.3)). Under New York law, which governs the Stipulation (APP17), a stipulation between parties is interpreted according to general principles of contract construction. *Iacobacci v. McAleavey*,

---

[4] As Debtors point out, even if UPPCO had not agreed to the disallowance and expungement of the SSR Claims in the Stipulation, the Bankruptcy Court's Order should still be affirmed because UPPCO failed to submit any evidence to substantiate its claim. (D.I. 16 at 13-14). To establish its entitlement to administrative expense priority, UPPCO bore the burden of showing a substantial contribution to the Debtors' bankruptcy. 11 U.S.C. § 503(b)(3)(D); *Leidos*, 567 B.R. at 458-59 ("[A]s the party seeking reimbursement, [claimant] had the burden to prove that it was entitled to a substantial contribution award by a preponderance of the evidence."); *see also Calpine Corp. v. O'Brien Envtl. Energy, Inc.* (*In re O'Brien Envtl. Energy, Inc.*), 181 F.3d 527, 533 (3d Cir. 1999) (holding burden of proof is on administrative expense claimant). Here, UPPCO was required to provide admissible evidence showing "an actual demonstrable benefit to the debtor's estate and the creditors" that was not merely incidental to UPPCO's efforts to serve its own interests. However, as the Bankruptcy Court correctly observed, UPPCO failed to supply any evidence in support of its Motion. (APP145 n.1 ("UPPCO did not provide a declaration with the Motion or a witness at the hearing on the Motion. The Court proceeded with legal argument on the Motion. It was, however, UPPCO which bore the burden of proof.")). While the parties agreed at the hearing to proceed on the basis that the Stipulation was clear and unambiguous (and thus dispositive), there was no evidentiary record upon which the Bankruptcy Court could have awarded UPPCO an administrative expense priority claim. (SA243 (5/3/17 Hr'g Tr. 6:5-14)). Therefore, the Bankruptcy Court's Order should be affirmed on this basis as well.

7

222 A.D.2d 406, 406-07 (N.Y. App. Div. 1995). "The cardinal rule of contract interpretation is that when the language is clear and unambiguous, the parties' intent is to be discerned from the instrument in accordance with the plain and ordinary meaning of its language." *Modern Med. Lab., Inc. v. Dowling*, 232 A.D.2d 901, 902 (N.Y. App. Div. 1996). When a contract is clear and unambiguous, courts will bind sophisticated parties to its terms. *See Spanski Enters., Inc. v. Telewizja Polska*, *S.A.*, 2013 WL 5366068, *4 (S.D.N.Y. Sept. 25, 2013), *aff'd*, 581 F. App'x 72 (2d Cir. 2014). As the Debtors correctly point out, Courts also strictly and unconditionally enforce contractual terms. (D.I. 16 at 8). *See, e.g.*, *Environ. Prod., Inc. v. Advanced Polymer Tech., Inc.*, 1997 WL 379182, at *3 (E.D. Pa. June 30, 1997) (clear language in releases "negotiated by commercial parties with substantially equal bargaining power should be construed to mean what it says."). Here, all of the applicable rules of interpretation demonstrate that, as a legal matter, the parties agreed that in exchange for the Debtors assuming the UPPCO Agreements and paying the cure amount, UPPCO agreed to disallowance (i.e., release) of all claims it held against the Debtors arising on or before the Effective Date. The Stipulation contains no exceptions or conditions to UPPCO's release of the Debtors, and UPPCO did not reserve the right to later assert additional pre-Effective Date claims. The Court finds no error in the Bankruptcy Court's conclusion that the Stipulation expunged and disallowed all pre-Effective Date claims.

Nor does the Court finds any error in the Bankruptcy Court's determination that the SSR Claims arose prior to the Effective Date. Section 101(5) of the Bankruptcy Code broadly defines "claim" to include the "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured." 11 U.S.C. § 101(5)(A). Under the Bankruptcy Code, "the contingent nature of the right to payment does not change the fact that the right to payment exists." *In re Ruitenberg*, 745 F.3d 647, 653 (3d Cir. 2014). Nor does the fact that a claim may not be

8

liquidated as of the Effective Date alter the nature of the claim. *See In re Telephone Warehouse, Inc.*, 259 B.R. 64, 69 (Bankr. D. Del. 2001) ("The Bankruptcy Code defines a 'claim' to include a contingent and unliquidated right to payment; a 'claim' arises when the right to payment accrues, not when payment is due."); *see also In re G-I Holdings, Inc.*, 308 B.R. 196, 202 (Bankr. D. N.J. 2004) (holding that contractual claim was not entitled to administrative expense even though claim was contingent and unliquidated as of the petition date). The definition of "claim" in the Bankruptcy Code thus "contemplates that all legal obligations of the debtor, no matter how remote or contingent, will be able to be dealt with in the bankruptcy case . . . [and] permits the broadest possible relief in the bankruptcy court." H.R. Rep. No. 95–595, at 309 (1977); *see also FCC v. NextWave Pers. Commc'ns Inc.*, 537 U.S. 293, 302 (2003) (holding that a "claim" under the Bankruptcy Code has "the broadest available definition").

The SSR Claims clearly fit within this broad definition of a "claim" and thus arose before the Effective Date. When the SSR Cost Reallocation took place, Debtors were obligated to pay UPPCO, even if Debtors' precise share of the SSR Cost Reallocation was not known at the time. (*See* D.I. 14 at 6). As Debtors correctly point out, it does not matter that UPPCO may not have had an obligation to *bill* the Debtors for the SSR charges before the Effective Date. *See Grossman's*, 607 F.3d at 121 ("A 'claim' can exist under the Code before a right to payment exists under state law."). The Court agrees that, as a matter of bankruptcy law, UPPCO's Stipulation to disallow all claims against the Debtors arising before the Effective Date includes the SSR Claims.

### B. UPPCO's Arguments Fail

UPPCO asserts various arguments on appeal. UPPCO first argues that the Bankruptcy Court used too "broad" of a definition of "claims" "in holding that the SSR Charges fall within [the category of] waived 'claims' under the terms of the Stipulation." (D.I. 14 at 11). This, however, is inconsistent with *Grossman's* and well-settled Third Circuit law. The Debtors'

9

obligation to pay UPPCO for electricity usage arose when the relevant regulatory body allocated costs related to those charges, which UPPCO does not dispute. (*See id*.). With respect to the SSR Claims, this happened in 2015 (APP67, APP111), when FERC reallocated and imposed the higher SSR charges on UPPCO after considering the various arguments raised for and against MISO's SSR Cost Reallocation, including those filed by UPPCO. (APP132-140). Thus, UPPCO's argument that the Bankruptcy Court's definition of "claim" could pick up "all anticipated future charges under the [UPPCO] Agreements" must fail; claims related to those future charges would only arise when the relevant regulatory body allocates the costs related to those specific charges.

Next, UPPCO continues to argue, as it did below, that the SRR Claims did not arise until September 2016 and were "future obligations" to be performed by the Debtors under the assumed UPPCO Agreements. (D.I. 14 at 7). UPPCO argues that, due to the SRR Cost Reallocation, UPPCO was unable to calculate the Debtors' share of SSR charges until it received information from MISO in September 2016. (B.D.I. 1660 at 4). "Because of the uncertainty and actual inability to calculate, the Debtors requested and UPPCO agreed that the Debtors' payment for the SSR charges would not be due until UPPCO was billed by MISO." (D.I. 14 at 6; APP22). Although the parties' Stipulation clearly "disallowed and expunged" "any and all claims held by UPPCO arising on or before the Effective Date" of the Plan (which occurred on July 15, 2016), UPPCO appears to argue that the Debtors' obligation to pay the SSR charges arose post-Effective Date, in September 2016, and only "once MISO provided information to enable calculation of the SSR charges allocated to the Debtors." (*See id*. at 5). As an initial matter, UPPCO fails to identify any portion of the record that would support its repeated assertion that the Debtors requested, or that the parties agreed, that "the Debtors' payment for the SSR Charges would not be due until UPPCO was billed by MISO." (D.I. 14 at 6; *see also* APP25-26 ¶ 30 ("the Debtors requested and UPPCO agreed to suspend billing the Debtors for estimated SSR allocations until UPPCO had to

pay its bill from MISO"). When questioned by the Bankruptcy Court, UPPCO could present no support for this contention at the evidentiary hearing. (*See* 5/3/17 Hr'g Tr., SA246:22-247:5). Even if UPPCO had provided evidence of such an agreement, as Debtors' counsel pointed out, when the parties may have agreed that a charge will be "billed" or "due" does not determine when a claim arises under the Bankruptcy Code or for purposes of the Stipulation. (*See id*. at SA251:15-17).[5]

UPPCO next argues that while the Bankruptcy Court examined the Stipulation's terms with respect to waiver of claims, it "failed to examine the Stipulation's overall purpose and underlying law regarding the assumed Agreements." (*See* D.I. 14 at 7). According to UPPCO, the intent of the overall Stipulation was the cure of existing defaults and assumption of the UPPCO Agreements, and the SSR Claims are entitled to administrative expense priority because they were effectively "cure" costs that the Debtors failed to satisfy. The Court also rejects this argument, because it ignores that the Debtors assumed the UPPCO Agreements under the Stipulation predicated on UPPCO's release of the SSR Claims. UPPCO cites no case holding that a debtor must pay a cure cost based on a claim its counterparty released. Essentially, UPPCO is asking the Court to enforce the Stipulation piecemeal, by requiring the Debtors to assume the UPPCO Agreements but ignoring UPPCO's release of the SSR Claims. Such a reading would be improper. *See Powell v. Omnicom*, 497 F.3d 124, 128 (2d Cir. 2007) ("When a party makes a deliberate, strategic choice to settle, a court cannot relieve him of that choice simply because his assessment of the consequences was incorrect.").

Finally, UPPCO argues that "the SSR Charges could not have been included in the cure amount, because they were not yet due and, therefore, not an existing default at the time the

---

[5] Additionally, the Stipulation contains a merger clause, which provides that all prior understandings and agreements, if any, were merged into the Stipulation. (*See* APP17 ¶ 8).

Agreements were assumed." (D.I. 14 at 15). UPPCO takes this argument a step further, arguing that because the SSR charges could not have been included in the cure amount, they could not have been subject to the Stipulation's disallowance. (*Id*.). By the same token, UPPCO argues, if the SSR charges had arisen prior to the time the parties entered into the Stipulation, as the Bankruptcy Court determined, then the Debtors' failure to have paid them constituted an existing default, the cure of which was required for the Debtors to have assumed the UPPCO Agreements. (*See* D.I. 14 at 15-16; D.I. 18 at 6; *see also* 5/3/17 Hr'g Tr., SA248:14-24, SA249:16-18). In support, UPPCO cites case law generally holding that (i) in order to assume an executory contract, a debtor must cure existing defaults, and (ii) § 365(b)(1) requires the cure of present defaults, not defaults that are not yet in existence. (*See id*.). UPPCO's arguments miss the mark, as they ignore (i) that the Stipulation clearly disallowed and expunged claims based on when those claims arose (pre-Effective Date) not based on whether those claims arose (or did not arise) from an existing default; and (ii) that the Stipulation settled various matters *in addition to* the parties' agreement as to the proper cure amount. (*See* APP14-18 (also resolving § 503(b)(9) claims against NWSI, general unsecured claims against NWSI and Escanaba, the Debtors' claim objections, and UPPCO's motion for relief from the automatic stay so that it could offset the true up against its various claims).

### C. Laches Does Not Apply

UPPCO asserted below that the Debtors were barred by the doctrine of laches from arguing that the SSR Claims were discharged because, according to UPPCO, the Debtors failed, for an unreasonably long time, to claim that the SSR Claims were prepetition obligations. In support of this argument, UPPCO points to the Debtors' failure to list the SSR Claims as prepetition obligations in their schedules and failure to raise any issues with respect to UPPCO's proofs of claim on the basis that the claims failed to include SSR Claims. Rather, UPPCO asserted Debtors

"slept" on their assertion that the SRR Claims were prepetition obligations, "opting to sandbag UPPCO after the parties had agreed on cure and assumption of the Agreement." (APP26). The Bankruptcy Court held that laches, as an affirmative defense to an untimely claim, was inapplicable in this case, as it was UPPCO which brought the claim in this matter – not the Debtors. (APP144). On appeal, UPPCO argues that the Bankruptcy Court erred in its failure to apply the doctrine of laches. (*See* D.I. 14 at 13-16). According to UPPCO, the "claim" to which the doctrine applies "is the Debtors' claim that the SRR Charges were expunged by the Stipulation," and that this claim meets the criteria for application of the doctrine.

Even if UPPCO could invoke the doctrine, the doctrine's criteria are not met. A party asserting laches as a defensive bar must establish "(1) an inexcusable delay in bringing the action and (2) prejudice . . . [which is established by showing] that the delay caused a disadvantage in asserting and establishing a claimed right or defense; the mere loss of what one would have otherwise kept does not establish prejudice."). *Burtch v. Ganz (In re Mushroom Transp. Co., Inc.)*, 382 F.3d 325, 337 (3d Cir. 2004). UPPCO does not meet the first factor, as the Court cannot conclude that the Debtors "slept" on their rights to claim the SSR Claims as pre-Effective Date obligations that would be disallowed under the Stipulation. UPPCO and the Debtors negotiated a Stipulation that provided for the disallowance of all pre-Effective Date claims against the Debtors in exchange for a cure payment and assumption of the UPPCO Agreements. UPPCO cites no authority requiring the Debtors to identify for UPPCO the specific claims UPPCO was releasing.

Nor does the Debtors' failure to identify the SSR Claims on their Schedules or contest the accuracy of UPPCO's proofs of claim support a finding of inexcusable that disadvantaged UPPCO in asserting and establishing its claimed rights. UPPCO identifies no authorities holding that a debtor's schedules can serve as the basis for laches. As the Debtors correctly point out, it was UPPCO's responsibility – not the Debtors' – to ensure that its claims were accurately scheduled

and to ensure the accuracy of its proofs of claim. *See ITT Commercial Fin. Corp. v. Dilkes (In re Analytical Sys., Inc.)*, 933 F.2d 939, 941-42 (11th Cir. 1991), *reh'g. denied*, 943 F.2d 1316 (explaining that "[i]t is the creditor's responsibility to verify the accuracy of his claim as listed on the debtor's schedules . . . and a creditor whose claim is not scheduled . . . must file a proof of claim with the bankruptcy court within the time fixed by that court."); *see also In re G-I Holdings, Inc.*, 313 B.R. 612, 635 (Bankr. D. N.J. 2004) ("[A] creditor whose claim is not scheduled . . . must file a proof of claim with the bankruptcy court within the time fixed by that court.'"); *In re Nat'l Steel Corp.*, 316 B.R. 510, 518 (Bankr. N.D. Ill. 2004) ("It is not the duty of the debtors to make [the creditor] or any of its creditors aware of every potential claim they may have against the debtors. To the contrary, it was [the creditor's] responsibility to explore, investigate and file a proof of claim against the debtors, not the other way around. The debtors' actions or inactions are irrelevant."). The sole case cited by UPPCO is unavailing.[6] The Court finds no error in the Bankruptcy Court's determination that the doctrine of laches is inapplicable.

### D. Judicial Estoppel Does Not Apply

The Bankruptcy Court rejected UPPCO's argument that the doctrine of judicial estoppel barred the Debtors from arguing that the SRR Claims were disallowed and expunged under the Stipulation. (*See* B.D.I. 1660 at 9-10). The Bankruptcy Court determined that judicial estoppel did not apply, as UPPCO "presented no evidence that Debtors took inconsistent positions or acted

---

[6] In support of its laches argument, UPPCO cites *In re U.S. Metalsource Corp.*, 163 B.R. 260 (Bankr. W.D. Pa. 1993). (D.I. 14 at 15). In that case, the unsecured creditors' committee affirmatively sought modification of an order nineteen months after the order authorized severance payments to former employees. *See id.* at 268-69. The committee's affirmatively requested relief was denied based on laches because the committee waited too long to go to court. *See id.* at 268. Here, the Debtors did not seek modification of an order of the Bankruptcy Court. Rather, UPPCO asked for a do-over on the releases it granted.

dishonestly or in bad faith" and also failed to provide any evidence that it reasonably relied on the Debtors' schedules in assuming that the SSR Claims were prepetition claims. (APP145).

Judicial estoppel is an "extreme remedy" that is only applied where a party has taken "irreconcilably inconsistent" positions in "bad faith," tantamount to a knowing misrepresentation or fraud on the court. *See Chao v. Roy's Constr., Inc.*, 517 F.3d 180, 186 (3d Cir. 2008); *see also In re Phillips Grp., Inc.*, 382 B.R. 876, 888 (Bankr. W.D. Pa. 2008) ("Judicial estoppel frequently is the harshest sanction a court can impose on a litigant . . . [i]t may be employed only when it is tailored to address some identified harm."). Courts require three elements to justify application of judicial estoppel:

> First, the party to be estopped must have taken two positions that are irreconcilably inconsistent. Second, judicial estoppel is unwarranted unless the party changed his or her position 'in bad faith – *i.e.,* with intent to play fast and loose with the court.' Finally, a district court may not employ judicial estoppel unless it is 'tailored to address the harm identified' and no lesser sanction would adequately remedy the damage done by the litigant's misconduct.

*Montrose Med. Grp. Participating Sav. Plan v. Bulger*, 243 F.3d 773, 779–80 (3d Cir. 2001) (internal citations omitted).

As to the first factor, UPPCO asserts that the Debtors "advocated that the SRR charges were not owed as of the filing date by failing to include those charge on their schedules" a position which is "irreconcilably inconsistent with the Debtors' current contention that the SSR charges were discharged in their bankruptcy." (D.I. 14 at 17). While the Debtor failed to schedule the SRR Claims, the global notes accompanying Debtors' schedules cautioned that the schedules were not binding, final statements of either their own positions or creditors' rights. (*See* B.D.I. 478, SA106-07, *Global Notes, Methodologies, and Specific Disclosures Regarding the Debtors' Schedules of Assets and Liability and Statements of Financial Affairs*). As the Debtors correctly argue, no creditor could reasonably rely solely on the Schedules to protect their rights in light of

15

such an explicit precaution. The failure to schedule the SRR Charges does not establish that the Debtors took two positions that are irreconcilably inconsistent.

As to the second factor, UPPCO offered no evidence that the Bankruptcy Court relied on or adopted the Schedules or the Cure Notice or that the Debtors used them in furtherance of litigation. *See In re Integrated Health Servs., Inc.*, 304 B.R. 101, 110 (Bankr. D. Del. 2004), *subsequently aff'd*, 233 F. App'x 115 (3d Cir. 2007) (denying judicial estoppel when defendant failed to show how it had been prejudiced by an omission on the debtor's schedules and how the court relied on such omissions); *Mon View Mining Co. v. Pa. Dep't of Revenue (In re Mon View Min. Co.)*, 479 B.R. 670, 679 (Bankr. W.D. Pa. 2012) (denying judicial estoppel when defendant failed to show how the court "adopted" the information contained in the debtor's schedules). UPPCO argued in the Motion that it relied on the Debtors' Schedules in assuming that the SSR charges were not prepetition claims (D.I. 14 at 15) but submitted no evidence of its reliance. The only evidence – the Schedules themselves – contained an express precaution that creditors should *not* rely on the Schedules to protect their claims. The Debtors' omission does not rise to the level of playing fast and loose with the Court. UPPCO offered no evidence of the Debtors' bad faith, as the Bankruptcy Court correctly found, and the failure to present such evidence undermines these equitable arguments. (APP145). The Court cannot conclude that the Bankruptcy Court abused its discretion (or committed clear error) in determining that the doctrines of laches and judicial estoppel did not apply.

## IV. <u>CONCLUSION</u>

For the reasons set forth herein, the Order is affirmed. A separate Order shall be entered.